IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAUREN J., <br><br> Plaintiff, <br> v. <br><br> ANDREW M. SAUL, <br> Acting Commissioner of <br> Social Security, <br><br> Defendant. | Case No. 17-cv-8138 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lauren J.[1] seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits. Specifically, Lauren seeks an award of benefits, or in the alternative, a remand to the Commissioner for further proceedings. The Commissioner filed a motion for summary judgment, asking the Court to affirm the ALJ's denial of benefits. For the reasons set forth below, the ALJ's decision is reversed and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

### I. BACKGROUND

On September 30, 2011, Lauren was performing as a dancer for Disneyland Resort in California when she felt a snap in her mid-back. (R. 456). Days later, she was presented to a Disneyland doctor, who was the first of many doctors to examine Lauren's spine. *Id.* at 457. Dr. William Shapiro diagnosed Lauren with an acute thoracic spine sprain and prescribed her anti-

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name or alternatively, by first name.

inflammatory medication and physical therapy. *Id.* Lauren was sent back to work but restricted to modified work with no dancing or lifting greater than 10 pounds. *Id.*

When the pain in her back and neck worsened and Lauren began feeling numbness and tingling in her fingers, (*see, e.g.,* R. 525, 534, 539), she pursued medical help in connection with a workers' compensation claim. In the two years following her injury, Lauren received treatment from at least eight doctors in California, including specialists in orthopedic surgery and occupational medicine. *Id.* at 312-21, 576-83. Lauren likewise received several MRI scans, which showed varying levels of cervical and thoracic spinal injury. For example, an MRI scan from May 2012 indicated that Lauren had "a C6-7 disc herniation in the cervical and [ ] a disc herniation at T7-8 and T9-10 with a sequestered fragment at that point and also degeneration at T8-9 left side." *Id.* at 489. Whereas an earlier scan from November 2011 indicated a "moderate right paracentral disc protrusion at C6-C7 . . . a minimal disc bulge . . . at C5-C6 without significant central or foraminal stenosis" and a "possible disc extrusion posterior to the T9 vertebral body . . . ." *Id.* at 533. Lauren was prescribed various medicines for her pain, such as Medrol Doesepak, Tramadol, Norco, Vicodin, and Lidoderm patches. *Id.* at 221, 313-14. In addition, Lauren received epidural injections to her cervical spine and thoracic spine. *Id.* at 410, 440. After exhausting Lauren's non-surgical treatment options, it was recommended that she have spinal surgery. *Id.*

Around July 2013, after being out of work for nearly 2 years, Lauren moved back to Chicago to live with her mother and step-father. (R. 569, 573, 583, 682). She continued to seek medical treatment for her symptoms, which by that time included: neck pain, upper back pain, numbness and tingling in her fingers, and muscle spasms throughout her right cervical musculature and arms. *Id.* at 410, 434. According to Lauren, standing, walking, and sitting exacerbated her symptoms. *Id.* at 410. While in Chicago, Lauren was evaluated by a psychologist and received

treatment from a pain specialist and a neurosurgeon. *Id.* at 611-16, 672-79, 681-88. As part of Lauren's workers' compensation claim, she was also evaluated by California orthopedic surgeon, Dr. Steven Silbart, in February 2016. By that time, Lauren reported constant numbness in some of her fingers, as well as burning and tingling. *Id.* at 656. She also stated that she had neck and back pain, which were made worse by: looking up and down, bending, stooping, sitting more than 15-20 minutes, standing for more than a few minutes, and walking more than a block. *Id.* at 655-57. Lauren additionally informed Dr. Silbart that she was beginning to feel some numbness and tingling in her feet, and that she had an episode of bowel control loss. *Id.* at 657.

Lauren filed applications for disability benefits in January 2014, alleging disability beginning October 15, 2011. (R. 23). Lauren's claims were initially denied on May 8, 2014, and upon reconsideration on November 25, 2014. *Id.* Upon Lauren's written request for a hearing, she appeared and testified at a hearing held on July 12, 2016 before ALJ Joel G. Fina. *Id.* at 34. The ALJ also heard testimony from a medical expert, Dr. Ashok G. Jilhewar, and a vocational expert, Glee Ann L. Kehr. *Id.* at 23.

On August 30, 2016, the ALJ issued a decision denying Lauren's applications for disability benefits. (R. 34). The opinion followed the required five-step evaluation process. 20 C.F.R. § 404.1520. At step one, the ALJ found that Lauren had not engaged in substantial gainful activity since October 15, 2011, the alleged onset date. *Id.* at 25. At step two, the ALJ found that Lauren had the severe impairments of chronic pain syndrome secondary to degenerative disc disease of the cervical and thoracic spine with cervical radiculopathy. *Id.* At step three, the ALJ determined that Lauren did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). *Id.* at 27.

The ALJ then concluded that Lauren retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she:

> can never climb ladders, ropes or scaffolds but can occasionally climb ramps or stairs. The claimant can occasionally balance, stoop or crouch but can never kneel or crawl. She can perform frequent reaching bilaterally except that she can only occasionally reach overhead bilaterally. She can engage in frequent handling of objects defined as gross manipulation and frequent fingering, defined as fine manipulation. The claimant must avoid concentrated exposure to dangerous moving machinery and must avoid all exposure to unprotected heights.

(R. 28). Based on this RFC, the ALJ determined at step four that Lauren could not perform her past relevant work as a dancer, waitress, or bartender. *Id.* at 32. At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Lauren could perform. *Id.* at 33-34. Specifically, the ALJ found Lauren could work as a telephone clerk, an order clerk, or an account clerk. *Id.* at 33. Because of this determination, the ALJ found that Lauren was not disabled. *Id.* at 34. The Appeals Council denied Lauren's request for review on September 12, 2017, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1; *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

## II. DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt.

P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Although this standard is generous, it is not entirely uncritical." *Steele*, 290 F.3d at 940. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.*

The ALJ found Lauren not disabled at step five of the sequential analysis because she retains the RFC to perform other work that exists in significant numbers in the national economy. Lauren asserts that the ALJ committed several reversible errors. First, Lauren argues that the ALJ erred in finding that her impairments did not meet Listed Impairments 1.04, 12.04, and 12.15. Second, Lauren asserts that the ALJ erred in failing to give controlling weight to treating physician Dr. Timothy Lubenow. Third, Lauren contends that the ALJ erred because the vocational expert's testimony was inconsistent with her RFC. Fourth, Lauren states that the ALJ relied upon multiple erroneous facts to support his denial of benefits.

The Court finds that the ALJ failed to properly weigh the opinion of treating physician Lubenow.[2] Accordingly, for the reasons discussed below, the ALJ's decision must be reversed.

### A. Treating Physician Dr. Timothy Lubenow

Lauren argues that the ALJ erred when he accredited "significant weight" to the medical expert, Dr. Jilhewar, over the opinions of the treating physicians Rosen, Spencer, Lubenow, and Deutsch. Doc. [25] at 4. According to Lauren, Dr. Jilhewar's opinion was inconsistent with the opinions of Drs. Rosen, Spencer, Lubenow, Deutsch, as well as the workers' compensation appointed orthopedic surgeon, Dr. Steven Silbart. *Id.* Lauren argues that Dr. Jilhewar is a gastroenterologist, not a spine specialist. *Id.* She also specifically attacks the ALJ's assignment of "little weight" to Dr. Lubenow's opinion because "Dr. Lubenow was the treating physician who conducted tests to accurately assess [her] Residual Function[al] Capacity." *Id.* at 5.

The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *Kaminski v. Berryhill*, 894 F.3d 870, 874, 874 n.1 (7th Cir. 2018) (for claims filed before March 27, 2017, an ALJ "should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record."). An ALJ must "offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted); *see also Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018). Those reasons must be "supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). "If an ALJ does not give a treating physician's

---

[2] Because this error requires remand, the Court does not address Lauren's other arguments.

opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c).

The record indicates that Dr. Lubenow began treating Lauren in April 2014. (R. 644). On May 1, 2014, Lauren presented to Dr. Lubenow, at which time she stated she was experiencing a pain level of 9/10. *Id.* at 611. She also reported that she had numbness and tingling. *Id.* Upon examination, Dr. Lubenow noted that she retained strength but that she had limited flexion of her neck, as well as cervical and thoracic radiculopathy. *Id.* From what the Court can discern from Dr. Lubenow's handwriting, the doctor additionally referred to "ROM in bending" and Cymbalta. *Id.*

On that same day, Dr. Lubenow completed a Physical Residual Functional Capacity Questionnaire, also by hand. *Id.* at 644. In Dr. Lubenow's form, he indicates that Lauren has cervical radiculopathy with the following symptoms: "numbness, tingling, aching[,] both arms [,] fingertips, neck pain." *Id.* Dr. Lubenow further characterized Lauren's pain, listed clinical findings and objective signs, and concluded that Lauren's experience of pain would interfere with her attention and concentration constantly. *Id.* at 644-45. Dr. Lubenow also concluded that Lauren was incapable of even "low stress" jobs and that she would only be able to walk less than one city block before needing to rest or before she would experience severe pain. *Id.* at 645. With normal breaks, Dr. Lubenow indicated that Lauren would be able to sit and stand/walk for less than 2 hours in an 8-hour working day. *Id.* at 646. Dr. Lubenow further found that Lauren should never lift 10 pounds or more in her job, and that she could rarely lift less than 10 pounds. *Id.* Dr. Lubenow opined that Lauren could only rarely look down, turn her head right or left, look up, or hold her

head in a static position. *Id.* at 647. Lauren could occasionally twist, stoop, and crouch, but she could never climb ladders or stairs. *Id.* Dr. Lubenow indicated that Lauren can use her hands, fingers, and arms for 0% of an 8-hour working day. *Id.* Finally, Dr. Lubenow stated that Lauren has significant limitations with reaching, handling, or fingering, and that she would likely be absent from work more than four days per month as a result of her impairments. *Id.*

On August 13, 2014, Dr. Lubenow saw Lauren again. (R. 613). Lauren presented with a pain level of 8/10. *Id.* From what the Court can discern from Dr. Lubenow's notes, he stated that Lauren had "Cervical Radiculopathy"; Dr. Lubenow further noted: "Thoracic Disc at T9-10." *Id.* After these notes, Dr. Lubenow listed a plan to refer Lauren to a different doctor for a new MRI scan on her "C Spine" and "T Spine." *Id.* at 614. Dr. Lubenow then concluded: "If not proceeding [to] surgery then . . . still Not Capable of work." *Id.*

The ALJ gave Dr. Lubenow's opinions "little weight" because the ALJ thought Dr. Lubenow "did not support his conclusions with any medical findings, observations or test results." (R. 31). The ALJ cited one normal EMG/NCV study of Lauren's bilateral upper extremities and "Dr. Lubenow['s] note [of] 5/5 strength bilaterally in the upper extremities" in his discussion of Dr. Lubenow's opinions. *Id.* The ALJ then bluntly states: "While Claimant's extensive worker's compensation record is contained in this record, the conclusions reached by Dr. Lubenow are unsupported by the various studies and evaluations contained therein." *Id.* While the ALJ mentions the brief treatment period, he cites only one example of the purported lack of support in the workers' compensation record: "For instance, Dr. Lubenow, who first treated Claimant only three months prior to this treating source statement, concludes that Claimant is unable to ever use her hands, fingers or arms in an eight hour work period. This is inconsistent with his previously noted 5/5 conclusion on May 1, 2014." *Id.*

8

Because the ALJ did not give controlling weight to Dr. Lubenow's opinions, he had to "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss*, 555 F.3d at 561; *see* 20 C.F.R. § 404.1527(c). An ALJ's failure to explicitly apply the checklist can be grounds for remand. *See, e.g.*, *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) ("in addition to summarizing [the treating physician's] visits and describing their treatment notes, the ALJ should explicitly consider the details of the treatment relationship and provide reasons for the weight given to their opinions"); *Campbell*, 627 F.3d at 308 ("the decision does not explicitly address the checklist of factors as applied to the medical opinion evidence."); *Larson*, 615 F.3d at 751 (remanding where the ALJ's decision "said nothing regarding this required checklist of factors."); *Wallace v. Colvin*, 193 F. Supp. 3d 939, 947 (N.D. Ill. 2016) ("the ALJ did not explicitly apply the checklist. In this Court's view, that failure alone is a ground for a remand.").

In this case, the ALJ did not appropriately address each of the checklist's factors. To begin, the ALJ failed to consider the nature and extent of the treatment relationship. Under 20 CFR § 404.1527(c)(2)(ii), the ALJ "will look at" the treatment that the treating source provided and the type of examinations and testing that the treating source has performed or ordered from specialists. The regulation explains by example that an ophthalmologist who merely *notices* neck pain during eye examinations will be given less weight than that of another physician who actually treated the patient's neck pain. *Id.* Here, the ALJ did not mention any techniques or exams conducted by Dr. Lubenow. In her brief, Lauren asserts that Dr. Lubenow conducted tests to form his RFC opinions. Doc. [25] at 5. The Court has no reason to doubt that assertion. At the very least, Dr. Lubenow's treatment records indicate that he examined Lauren's range of motion, prescribed her medicine,

and ordered MRI scans in order to treat her pain. (R. 611, 615-16). Without discussion or comment by the ALJ on these matters, the Court cannot determine whether the ALJ accounted for the nature or extent of Dr. Lubenow's treatment relationship with Lauren when weighing his opinions.

Nor did the ALJ expressly consider Dr. Lubenow's specialty, or the frequency of Dr. Lubenow's treatment of Lauren. The ALJ did not acknowledge that Dr. Lubenow was a pain specialist when weighing his opinions, despite the fact that Dr. Lubenow's specialty was mentioned at Lauren's hearing. (*see* R. 68). And while the ALJ did note the limited duration of Dr. Lubenow's treatment relationship with Lauren, the ALJ did not assess or discuss how many times Lauren saw Dr. Lubenow in their four-month relationship. The ALJ therefore failed to minimally address the factors of specialty and frequency.

The Commissioner argues that the ALJ's assignment of greater weight to the state agency doctors shows that the ALJ considered "the catch-all" factor when weighing Dr. Lubenow's opinions. Doc. [45] at 15. In support of this argument, the Commissioner cites to 20 C.F.R. § 404.1527(c)(6). That regulation provides:

> When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the medical opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

*Id.* It is true that 20 C.F.R. § 404.1527(c)(6) states that the ALJ will consider other factors, including factors brought to the ALJ's attention by others. However, the ALJ did not state in this case that he was giving less weight to Dr. Lubenow in light of the state agency doctors' findings. The Commissioner cannot retroactively add factors to the ALJ's analysis of Dr. Lubenow. *See*

*Wollman v. Colvin*, No. 13-CV-037-CJP, 2013 WL 5700975, at *7 (S.D. Ill. Oct. 18, 2013) ("Simply put, this Court is required to review the ALJ's decision based on what the ALJ actually said, and not on a reinterpretation of the ALJ's decision based on the Commissioner's after-the-fact reweighing of the evidence."). Furthermore, the Court is not aware of—and the Commissioner has not directed the Court to—any authority indicating that an ALJ's consideration of 20 C.F.R. § 404.1527(c)(6) negates the ALJ's responsibility to properly address the other checklist factors. The Commissioner's "catch-all" argument thus misses the mark.

The ALJ does touch on the supportability and consistency of Dr. Lubenow's opinions. *See* 20 CFR § 404.1527(c)(3)-(4). The regulations explain that supportability encompasses the preference given to a medical source that "presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings . . . ." 20 CFR § 404.1527(c)(3). Whereas consistency is directed at the fit of the medical source's opinion in the context of the record as a whole. 20 CFR § 404.1527(c)(4). In this case, the ALJ concluded that Dr. Lubenow "did not support his conclusions with any medical findings, observations or test results," (R. 31), which seems directed at supportability. As for consistency with the record as a whole, the ALJ states that Dr. Lubenow's conclusions are unsupported by the worker's compensation record. *Id.* In connection with these conclusions, the ALJ points to Dr. Lubenow's 5/5 strength determination, as well as an EMG/NCV study from December 2011. *Id.*

Even if the ALJ's scarce suppositions about supportability and consistency could satisfy the checklist requirement, they do not constitute "good reasons" for discounting Dr. Lubenow's opinions. *Campbell*, 627 F.3d at 306. Instead, the ALJ's conclusions are inaccurate. As an initial matter, the ALJ is incorrect in stating that Dr. Lubenow did not "support his conclusions with any medical findings, observations or test results." (R. 31). Although Dr. Lubenow's handwritten

observations and findings may be difficult to read, they are still present in his treatment records.[3] On the first page of Dr. Lubenow's questionnaire, he lists several clinical findings and objective signs supporting his opinions, including "+TTP Cervical & Lumber Parasp[inal] muscles; numbness & decreased [ ] sensation . . . in C8 distribution of her left hand & at the C7-C8 distribution of the Right hand." *Id.* at 644. The first page of Dr. Lubenow's questionnaire likewise includes his diagnosis that Lauren suffers from cervical radiculopathy. *Id.* On August 13, 2014, when Dr. Lubenow renewed his opinion that Lauren's impairments prevented her from returning to work, his notes include his finding that Lauren has cervical radiculopathy, as well as a comment regarding Lauren's "Thoracic Disc at T9-10." *Id.* at 613. The ALJ's incorrect statement about the supportability of Dr. Lubenow's opinions does not constitute a "good reason" for rejecting his opinions.

It is similarly inaccurate for the ALJ to say Dr. Lubenow's opinions are not supported by the workers' compensation records. In fact, there are several studies and evaluations from those records that support Dr. Lubenow's opinions. For instance, the ALJ appears to take issue with Dr. Lubenow's diagnosis of radiculopathy, but Dr. Lubenow was not the first doctor to diagnose Lauren with radiculopathy.[4] Radiculopathy refers to a "Disorder of the spinal nerve roots."

---

[3] To the extent that the ALJ could not understand Dr. Lubenow's treatment notes, he should have re-contacted Dr. Lubenow for clarification. *Koppers v. Colvin*, No. 15 CV 5471, 2016 WL 3136916, at *4 (N.D. Ill. June 6, 2016) (directing ALJ on remand to recontact the doctor to "request legible copies of his notes . . . or an explanation of the findings contained therein"); *Russell v. Astrue*, No. 09 CV 5702, 2012 WL 645937, at *14 (N.D. Ill. Feb. 24, 2012) (holding ALJ had duty to follow up with physician to "more thoroughly explain his conclusions" where records of claimant's treating physician were "largely illegible"); *Torres v. Colvin*, No. 13 CV 125-PRC, 2014 WL 4587153, at *15 (N.D. Ind. Sept. 15, 2014) (finding ALJ should have contacted the claimant's treating physician for clarification of the physician's difficult-to-read treatment records).

[4] Also, the ALJ himself concluded that Lauren had the severe impairment of cervical radiculopathy. (R. 25).

STEDMANS MEDICAL DICTIONARY § 748650, Westlaw (database updated November 2014). "Radiculitis" is a synonym of radiculopathy. *Id.* Dr. Steven Silbart, the orthopedic surgeon, consulting for Disneyland's Workers' Compensation Department, examined Lauren and reviewed her medical records on at least three occasions. (*See* R. 436, 472, 659). On August 6, 2012, Dr. Silbart diagnosed Lauren as having: "Cervicothoracic spine strain with lower thoracic extruded disc and bilateral upper extremity *radiculitis* . . . ." *Id.* at 472 (emphasis added). In this way, the workers' compensation doctor charged with understanding the longitudinal treatment of Lauren, supports Dr. Lubenow's diagnosis.

As for Dr. Lubenow's opinions on work restrictions to Lauren's lifting, reaching, handling, or fingering, those opinions have support in the workers' compensation record as well. In April 2012, Dr. Charles Rosen opined that Lauren had reached "Permanent and Stationary" status in her workers' compensation claim and restricted Lauren from lifting weight greater than 10 pounds. *Id.* at 462. Dr. Rosen similarly concluded that Lauren should not engage in any repetitive grasping or gripping activities with her left hand, and that she was to have a ten-minute break for every hour of standing and walking. *Id.* at 462-63. Previously, in December 2011, Dr. Brian Grossman, an orthopedic surgeon consulting for Disneyland, determined that Lauren could not lift greater than one pound, and that she further would be restricted from forceful pushing or pulling and repetitive movements of the neck. *Id.* at 523. In addition, several of the workers' compensation doctors who examined and treated Lauren noted Lauren's symptoms of numbness, tingling, and pain extending from her neck to her arms and fingers, which resonate with Dr. Lubenow's conclusion that she has significant limitations with reaching, handling, and fingering. For example, in January 2013, when Lauren received one of her epidural injections, an "indication for the procedure," was Lauren's "significant neck pain with popping in her cervical spine," along with "numbness and tingling,

13

which extends down her arms bilaterally into the ring and little finger of both hands." *Id.* at 445. *See also id.* at 315, 317-320. Contrary to the ALJ's blanket statement, several records in the workers' compensation file support work restrictions from Dr. Lubenow's RFC questionnaire.

In connection with Dr. Lubenow's opinions, the ALJ, and the Commissioner, make much of two items in the record. The first is Dr. Lubenow's finding that Lauren had 5/5 strength in her upper extremities. (*See* R. 31; Doc. [45] at 14). The second is a normal EMG/NCV of Lauren's bilateral upper extremities from 2011. *Id.* The Court finds neither item constitutes substantial evidence in the record. While it is entirely possible that a strength finding could indicate that Lauren does not have cervical or thoracic radiculopathy, *see id.* at 611, the ALJ failed to explain how Lauren's retention of strength means that Lauren could not have a debilitating disorder of the spine. Without that explanation, there is no accurate and logical bridge between the evidence and the ALJ's decision to discount Dr. Lubenow's opinions. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). The Court therefore cannot "understand the link between the evidence and the ALJ's decision." *Enuenwosu v. Berryhill*, No. 16 C 5719, 2017 WL 2684092, at *6 (N.D. Ill. June 21, 2017) (noting that "[w]ithout such a logical bridge, the Court cannot trace the path of the ALJ's reasoning").

The ALJ also fails to explain why one EMG from 2011 with normal findings outweighs the numerous subsequent MRIs in the record that reveal Lauren's spinal impairments. (*See, e.g.*, R. 349 (January 18, 2012 MRI impressions of "C6-7 cervical disc herniation" and "Thoracic disc herniation"); *id.* at 400-01 (September 5, 2013 MRI impressions of foraminal stenosis and disc bulges at the C6-C7 and C5-C6 levels)). The Court specifically notes that workers' compensation physicians reviewed the EMG from 2011 and continued to diagnose Lauren with spinal injuries. As an example, in January 2012, Dr. Luga Podesta of Podesta Orthopedic & Sports Medicine

Institute saw Lauren for a "re-evaluation of her cervical and thoracic spine and for review of her MRI and electrodiagnostic testing." *Id.* at 507. While Dr. Podesta noted that Lauren's EMG results "appear to be normal," he nevertheless assessed Lauren as having "[n]eck pain secondary to cervical disc protrusion at the C6-C7 level to the right paracentral [and] T9 thoracic disc extrusion." *Id.* at 509-10. In his treatment plan for Lauren, Dr. Podesta stated: "It is my opinion at this time because of her ongoing pain and inability to perform any activities including many activities of daily living such as sitting, standing, driving, and strenuous activity requiring movement of her cervical spine or thoracic spine that she consult with a surgeon regarding surgical intervention of the cervical disc herniation as well as the thoracic disc extrusion." *Id.* at 509. Dr. Silbart, too, acknowledged the December 21, 2011 "EMG/NCV testing of the bilateral upper extremities which revealed . . . a normal study," *id.* at 461, and nevertheless diagnosed Lauren with cervicothoracic spine strain with lower thoracic extruded disc and bilateral upper extremity radiculitis. *Id.* at 472. So, to at least two orthopedic specialists working with Lauren, the 2011 EMG was not determinative in diagnosing her spinal injuries. Perhaps the ALJ disagreed with Drs. Podesta and Silbart, and their interpretations of the 2011 EMG. However, the ALJ did not weigh the opinions of either, so the Court has no way to know.

Overall, the ALJ's reasons for discounting Dr. Lubenow's opinions consist of conclusory statements and two cherry-picked medical findings. The Commissioner claims that the ALJ "*explained* [that] neither Dr. Lubenow's own testing, nor the rest of the record, supported the extreme limitations Dr. Lubenow offered." Doc. [45] at 15 (emphasis added). But there was no such explanation. Instead, the ALJ stated baldly that Dr. Lubenow did not "support his conclusions with any medical findings, observations or test results," and that "the conclusions reached by Dr. Lubenow are unsupported by the various studies and evaluations contained [in the workers'

15

compensation record]." (R. 31). The only two pieces of evidence the ALJ provided to support these two conclusions were the 5/5 strength finding and the 2011 EMG, and the ALJ failed to explain how either piece of evidence contradicted Dr. Lubenow's conclusions. Moreover, because the ALJ's analysis focuses only on two pieces of evidence that may contradict Dr. Lubenow's opinions, the Court is not confident that the ALJ grappled with the aforementioned evidence that supports Dr. Lubenow's conclusions. *See Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir.2013) ("An ALJ cannot rely only on the evidence that supports her opinion."). *See also Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014) (holding ALJ engaged in improper cherry-picking when ALJ adopted RFC finding of non-examining expert who seized upon one GAF score to conclude that claimant was not substantially impaired). As a result, the Court cannot say that the ALJ weighed all of the relevant medical evidence.

Because the ALJ failed to properly address each of the checklist factors, and because his apparent reasons for discounting Dr. Lubenow's opinions are not supported by substantial evidence in the record, the Court finds that the ALJ's decision is reversed and remanded for having improperly weighed Dr. Lubenow's opinions. The Court further observes that the ALJ failed to assign weight to numerous physicians presented in the medical record, including Drs. Rosen, Spencer, and Deutsch, who Lauren characterizes as treating physicians. Doc. [25] at 4. Upon remand, the ALJ should determine whether any of these physicians constitute "Treating source[s]" under 20 C.F.R. § 416.927(a)(2). For each treating source, the ALJ should explain what weight, if any, he gives to the physician's opinion. If the ALJ gives less than controlling weight to a treating physician's opinion, he must then apply the regulatory checklist factors in explaining his reasoning. As the Commissioner notes, Doc. [45] at 15, the ALJ need not defer to any non-medical

16

opinions on the ultimate issue of disability, which is an issue reserved for the Commissioner. 20 C.F.R. § 404.1527(d)(1).

### B.     Harmless Error

The ALJ's treating physician error was not harmless in this case. An error is harmless when it is "predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *see McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("Thus, we look at the evidence in the record to see if we can predict with great confidence what the result on remand will be.").

A proper weighing of Dr. Lubenow's opinions may have afforded more weight to his opinions. Although the length of Dr. Lubenow's treatment relationship was short, Dr. Lubenow's specialty in pain and the consistency of certain of Dr. Lubenow's opinions with the workers' compensation record indicate that at least some of his opinions were entitled to more weight. More specifically, as discussed above, Dr. Lubenow's opinions on restrictions regarding Lauren's lifting, reaching, handling, or fingering, as well as his diagnosis of radiculopathy, have support in the workers' compensation record. If the ALJ had properly assessed Dr. Lubenow's specialty and the extensive workers' compensation record when weighing Dr. Lubenow's opinions, it is possible that the ALJ would have given more weight to Dr. Lubenow's opinions. The Court, therefore, is not confident that the ALJ would have given Dr. Lubenow's opinions the same weight, had the regulatory factors been properly assessed. *Cf. Scheie v. Berryhill*, No. 16 C 9012, 2018 WL 1586247, at *7 (N.D. Ill. Apr. 2, 2018) (finding harmless error in ALJ's failure to discuss longitudinal relationship of treating physician where court was confident that "if [the] case were

remanded and if the ALJ then explicitly applied the treating physician rule, she would reach the same result").

If Dr. Lubenow's opinions had been given more than "little weight" in this case, it is possible that the ALJ would have selected a more restrictive RFC for Lauren because Dr. Lubenow's physical RFC assessment includes restrictions that are not present in the RFC chosen by the ALJ. For instance, Dr. Lubenow opined that Lauren has significant limitations with reaching, handling, or fingering. (R. 647). The ALJ's RFC, by contrast, stated that Lauren "can *perform frequent reaching bilaterally* except that she can only occasionally reach overhead bilaterally. She can *engage in frequent handling of objects* defined as gross manipulation and *frequent fingering*, defined as fine manipulation." *Id.* at 28 (emphasis added). Dr. Lubenow further stated that Lauren's experience of pain would interfere with her attention and concentration constantly, and that she would only be able to sit and stand/walk for less than 2 hours in an 8-hour working day. *Id.* at 645, 646. Whereas the RFC selected by the ALJ did not accommodate any off-task time or limitations in concentration, persistence, or pace. The chosen RFC, moreover, limited Lauren to sedentary work, which the regulations define as involving sitting with some walking and standing to carry out job duties:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The ALJ's RFC was thus inconsistent with Dr. Lubenow's opinions. As a result, the Court cannot say that the ALJ's failure to properly weigh Dr. Lubenow's opinions was harmless. *See Edwards v. Colvin*, No. 14 CV 1345, 2016 WL 1271049 (N.D. Ill. Mar. 29, 2016)

(holding ALJ's error in failing to consider opinion of treating physician not harmless where treating physician's opinion contradicted the ALJ's RFC); *See Minett v. Colvin*, No. 13 CV 4717, 2015 WL 7776560, at *5 (N.D. Ill. Dec. 2, 2015) (finding improper weighing of medical opinions harmful where ALJ "may have increased the [RFC] limitation if he gave more weight to the opinions of Claimant's two treating physicians").

In sum, if the ALJ had properly weighed the opinions of Dr. Lubenow, it is possible the Court would have given Dr. Lubenow's opinions greater weight. Because Dr. Lubenow's opinions contradict the ALJ's RFC, it is further possible that the ALJ's RFC for Lauren would be different upon remand. Thus, the ALJ's treating physician error was not harmless.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Summary Judgment [44] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: November 7, 2019

_____
Sunil R. Harjani
United States Magistrate Judge